IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| John Jung and Janice Jung, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil File No. 2:08cv120 |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| General Casualty Company of Wisconsin, | ) | **ON MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

This case arises out of motor vehicle accident between a vehicle owned and driven by Richard Martin (" Martin") and a vehicle driven by plaintiff John Jung and owned by his employer, Tooz Construction.  Plaintiffs have made a claim for underinsured coverage from defendant General Casualty Company of Wisconsin ("General Casualty"), the employer's insurer.  General Casualty has moved for summary judgment on plaintiff John and Janice Jungs' ("Jungs") claim, asserting that as a matter of law the at-fault vehicle owned and driven by Martin was not underinsured, taking into account Martin's liability coverage and excess coverage. (Doc. #13).  Plaintiffs oppose the motion, contending the excess policy maintained by Martin is not a motor vehicle policy and must be disregarded in accordance with Rask v. Nodak Mutual Insurance Company when determining whether the Martin vehicle is underinsured.  Rask v. Nodak Mut. Ins. Co., 626 N.W.2d 693 (N.D. 2001).  The magistrate judge has carefully considered the briefs and documents filed by the parties and now issues this Report and Recommendation.

**Summary of Recommendation**

The General Casualty policy insuring John Jung's employer, Tooz Construction, is unambiguous.  The Martin excess policy should be taken into account when considering whether Martin's motor vehicle is underinsured.  The holding in <u>Rask</u> is distinguishable.  Defendant's Motion for Summary Judgment should be **GRANTED**.

**Facts**

John Jung was seriously injured in a motor vehicle accident on November 30, 2006.  At the time Jung was driving a 2006 Dodge Ram 2500 pickup truck owned by his employer, Tooz Construction, and insured by General Casualty.  The Tooz Construction/General Casualty policy included an underinsured motor vehicle (UIM) endorsement of $1,000,000 in effect at the time of the accident.  Martin was driving a 2001 Dodge Ram 2500 truck insured by Nodak Mutual Insurance Company ("Nodak").  The limits of the liability coverage under the Martin/Nodak policy were $250,000 per person and $500,000 per accident.  Martin also had a personal excess liability policy issued by Nodak with a $1,000,000 limit.  The excess policy specifically identified the operation of the Martin vehicle as an insured risk.  (Doc. #13-5).  Jung and Martin reached a settlement agreement wherein Jung received the entire coverage amount of both Martin policies, $1,250,000, paid in two separate checks.

**Summary Judgment Standard**

Under Fed. R. Civ. P. 56, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The burden is on the moving party to establish the basis for its motion.  <u>Donovan v. Harrah's Md. Heights Corp.</u>, 289 F.3d 527, 529 (8th Cir. 2002).  It is axiomatic that the evidence is viewed in a light most

favorable to the nonmoving party, and the nonmoving party enjoys the benefit of all reasonable inferences to be drawn from the facts.  See, e.g., Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (quotations omitted).  A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate.  Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995).

## Analysis

North Dakota Century Code section 26.1-40-15.3 statutorily establishes the mandate for UIM coverage, determining the extent of the insurer's liability.   This section provides:

> 1. The insurer shall also provide underinsured motorist coverage at limits equal to the limits of uninsured motorist coverage. Underinsured motorist coverage must pay compensatory damages which an insured is legally entitled to collect for bodily injury, sickness, disease, including death resulting therefrom, of such insured, from the owner or operator of an underinsured motor vehicle arising out of the ownership, maintenance, or use of such underinsured motor vehicle.

> 2. The maximum liability of the underinsured motorist coverage is the lower of:

> a. The amount of compensatory damages established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury, sickness, disease, or death resulting therefrom; or

> b. The limits of liability of the underinsured motorist coverage.

N.D. Cent. Code § 26.1-40-15.3 (1989).  North Dakota Century Code section 26.1-40-15.1 defines an underinsured motor vehicle:

> 2. "Underinsured motor vehicle" means a motor vehicle for which there is a

3

bodily injury liability insurance policy, or bond providing equivalent liability
protection, in effect at the time of the accident, but the applicable limit of bodily
injury liability of such policy or bond:

a. Is less than the applicable limit for underinsured motorist coverage under the
insured's policy; or

b. Has been reduced by payments to other persons injured in the accident to an
amount less than the limit for underinsured motorist coverage under the insured's
policy.

N. D. Cent. Code § 26.1-40-15.1 (1999).

The UIM endorsement of the policy issued by General Casualty to Tooz Construction

defines "underinsured motor vehicle" as follows:

3.      Underinsured motor vehicle means a land motor vehicle or "trailer" for which the
        <u>sum of all liability bonds or policies that apply</u> at the time of the "accident" is
        either:
        a.      Less than the Limit of Insurance for Underinsured Motorists
                Coverage under this Coverage Form or policy, or
        b.      Reduced by payments to others injured in the "accident" to less
                than the Limit of Insurance for Underinsured Motorists Coverage
                under this Coverage Form or policy.

(Doc. #13-1) (emphasis added).

"When the language of an insurance policy is unambiguous it should not be strained to

impose liability on the insurer."  <u>Davis v. Auto-Owners Ins. Co.</u>, 420 N.W.2d 347, 348 (N.D.

1988), <u>citing</u> <u>Anderson v. American Standard Ins. Co.</u>, 293 N.W.2d 878 (N.D. 1980).  In <u>Rask</u>,

the court held, "We look first to the language of the policy as a whole, and if the language is

clear on its face, our inquiry is at an end."  <u>Rask</u>, 626 N.W.2d at 696, <u>citing</u> <u>Dundee Mut. Ins.</u>

<u>Co. v. Marifjeren</u>, 1998 ND 222, ¶9, 587 N.W. 2d 191.  The determination of whether or not an

insurance policy is ambiguous is a question of law for the court.  <u>DeCoteau v. Nodak Mut. Ins.</u>

<u>Co.</u>, 603 N.W.2d 906, 913 (N.D. 2000).

4

Under both North Dakota statute and the General Casualty policy, a vehicle is "underinsured" only if the policy limits applicable to the at-fault vehicle are less than the UIM coverage in the policy under which benefits are sought. The General Casualty UIM endorsement varies from the statutory language in that it specifically provides that UIM coverage is only applicable when the "<u>sum of all liability bonds or policies that apply at the time of the</u> '<u>accident</u>'" are less than the coverage provided therein. The contact language is clear. The question is whether or not the Martin excess policy "applied," as specified in the General Casualty UIM contract. For the following reasons, the magistrate judge recommends a finding that General Casualty's UIM endorsement definition encompasses Martin's excess policy. Martin was an insured under both the vehicle liability policy and the excess liability policy. Both policies identified Martin's Dodge Ram truck as an insured liability. Both policies applied to Martin's maintenance, ownership and operation of his vehicle. The sum of liability coverage under the two policies purchased by Martin totaled $1,250,000, which is $250,000 more than the General Casualty UIM coverage. The Martin vehicle was not underinsured.

Plaintiffs assert that the holding in <u>Rask</u> is determinative of the issue. <u>Rask</u>, 626 N.W.2d 693 (N.D. 2001). Specifically, plaintiffs assert that the insured status of the vehicle, not the driver, determines whether or not UIM benefits are available. <u>Rask</u> involved a one-vehicle accident owned by Chynna Wass and father, Randall Wass ("Wass"). Beth Sondag ("Sondag") was driving the Wass vehicle with permission from Chynna Wass. <u>Id.</u> at 695. Two passengers, Chynna Wass and Ashley Rask, were killed. <u>Id.</u> Two other passengers, Miranda Hagen and Amy Davis, sustained serious injuries. <u>Id.</u> The four passengers, or their legal representatives, sued Sondag. <u>Id.</u> The Wass vehicle was insured by State Farm Mutual Insurance Company ("State Farm"), providing liability limits of $100,000 for each person and $300,000 for each

accident.  Id.  Sondag was insured under the State Farm policy as a permissive user. Id.  Sondag

was also insured under her parents' policy with Center Mutual Insurance Company ("Center

Mutual"), with the same limits.  The parties reached a settlement wherein both State Farm and

Center Mutual contributed the policy limits and the plaintiffs agreed upon distribution of the

$600,000.  Id.  State Farm and Center Mutual each paid half of the total amount of the settlement

to each claimant.  Id.  The heirs of Ashley Rask received $187,500.

Ashley Rask's mother, Leslie Rask ("Rask"), was a named insured under a Nodak

Mutual policy which provided underinsured motorist coverage of $100,000 per person and

$300,000 per accident. Id.  Rask notified Nodak Mutual of the settlement and made a claim for

underinsured motorist coverage, asserting the $93,750 paid under the State Farm policy was less

than the $100,000 underinsured limit of the Nodak Mutual policy. Id.

The North Dakota Supreme Court, recognizing that its first inquiry is the language of the

policy, held that "if the language is clear on its face, our inquiry is at an end."  Id. (citation

omitted).  The court noted that the language in the Nodak Mutual policy pertaining to

underinsured motor vehicle coverage was virtually identical to the statutory definition of an

underinsured motor vehicle.  Id. at 696-97.  The court affirmed the district court's decision that

"the only policy to consider is the policy insuring the motor vehicle involved in the accident in

this case, the Wass State Farm policy," id. at 697, stating it is the "insured status of the vehicle

that is determinative, not the insured status of the operator."  Id.  In so holding, the court stated

that "the definition of underinsured motor vehicle is not ambiguous" and "under the plain

language of the definition," "[t]o look to the insured status of the driver rather than the vehicle

would render meaningless the language under N.D.C.C. § 26.1-40-15.3(1) requiring the damages

arise 'out of the ownership, maintenance, or use of such underinsured motor vehicle.'"  Id. at

697.  Because the accident did not arise out of the "ownership, maintenance, or use of any of the vehicles owned by the Sondags and insured by Center Mutual," the court determined it would be inappropriate to look to the Sondag vehicles to determine whether the Wass vehicle was underinsured.  Id.

This case presents a materially different factual scenario.  The accident did arise out of the "ownership, maintenance and use" of the vehicle insured by Martin's excess policy.  The driver of the vehicle in Rask was insured by an entirely separate policy than the policy that applied to the vehicle involved in the accident.  Here, Martin owned and maintained the vehicle involved in the accident, he purchased the excess policy, and his use of the vehicle was identified in the excess policy as an insured risk.  Since the vehicle involved in the accident was insured under both the automobile liability policy and the excess policy, both policies "applied" at the time of the accident.

The holding in Rask is distinguishable to the extent the court finds the Martin excess policy applied to the vehicle under the present circumstances.  The General Casualty policy provides UIM coverage only when the "sum of all liability bonds or policies that apply" is less than the UIM coverage limit.  The insurance policy in Rask was essentially identical to the statutory language, N.D. Cent Code § 26.1-40-15.1(2).  The UIM definition in the Rask/Nodak policy did not encompass the Sondag/Center Mutual policy covering the at-fault driver.  Because Martin's excess policy "applies" to the vehicle, the different policy language results in a different outcome than in Rask.

Plaintiffs' argument that the definition of "policy"contained in  N.D. Cent. Code § 26.1-40-01 excludes any insurance provided on an excess basis is misplaced.  The definitions contained in this section are specifically limited to use in sections 26.1-40-02 through 26.1-40-

7

12.  The UIM coverage statute is found at section 26.1-40-15.3, several sections <u>after</u> the parameters established in the definition section.  Further, section 26.1-40-15.1 contains definitions applicable to UIM, but "policy" is not defined.  Therefore, section 26.1-40-01's definition of "policy" excluding "any policy providing insurance only on an excess basis; or any other contract providing insurance to a named insured even though the contract may incidentally provide insurance with respect to such motor vehicles" is not applicable.

Finally, Nodak's issuance of two separate settlement checks does not prove, as plaintiff suggests, that the excess policy does not apply in calculating UIM coverage.  Rather, it simply indicates two policies covered the same liability– namely, the same vehicle and the same driver. Although Dale Haake, Director of Casualty Claims for Nodak Mutual, opined that the excess policy "is not an automobile policy per se," (doc. #12-3), he acknowledged that two liability policies insured "Richard Martin and the automobile accident he was involved in on November 30, 2006 with John Jung."  (Doc. #13-2).  The excess policy unquestionably applied to the accident, as evidenced by the amount of the settlement paid by Nodak Mutual.

### Conclusion

The Magistrate Judge recommends defendant General Casualty Company of Wisconsin's Motion for Summary Judgment (Doc. #12) be **GRANTED** and plaintiffs John and Janice Jung's Complaint be **DISMISSED**.  Plaintiffs' Request for Oral Argument is **DENIED**. (Doc. #15).

**Notice of Right to Object**

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1 (D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.

Dated this 1st day of June, 2010.

*/s/ Karen K. Klein*
Karen K. Klein
United States Magistrate Judge